**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| R. Z. C., by and through his parents David C. and Dianna C., | No. 17-35933 |
| Plaintiff-Appellant, | D.C. No. 2:16-cv-01064-TSZ |
| v. | MEMORANDUM* |
| NORTH SHORE SCHOOL DISTRICT, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted December 6, 2018
Seattle, Washington

Before: W. FLETCHER and BYBEE, Circuit Judges, and BURNS,** District Judge.

An Administrative Law Judge ("ALJ") determined that a high school

student, R.C., was not entitled to an independent educational evaluation ("IEE")

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Larry A. Burns, United States District Judge for the Southern District of California, sitting by designation.

after the Northshore School District ("District") completed an evaluation and determined he was no longer eligible for special education services. The ALJ also concluded that the District provided R.C. with a free appropriate public education ("FAPE"). The district court affirmed.

"[W]hen reviewing state administrative decisions, courts must give 'due weight' to judgments of education policy." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993) (internal quotation marks and citations omitted). We review *de novo* whether a state provided a FAPE under the Individuals with Disabilities Act ("IDEA"). *Doug C. v. Haw. Dep't of Educ.*, 720 F.3d 1038, 1042 (9th Cir. 2013).

**1.** The District's evaluation was appropriate. "Parents of a student eligible for special education have the right . . . to obtain an independent educational evaluation of the student if the parent disagrees with the school district's evaluation," subject to certain limitations. Wash. Admin. Code § 392-172A-05005(1)(a). When a parent requests an IEE, "the school district must either: (i) Initiate a due process hearing within fifteen days to show that its evaluation is appropriate; or (ii) Ensure that an independent educational evaluation is provided at public expense without unnecessary delay." *Id.* § 392-172A-05005(2)(c). R.C. argues the District's evaluation was inappropriate

because (1) the evaluation report omitted information required by the Washington Code; (2) the District's classroom observation was inadequate; (3) the District failed to provide appropriate written notice to R.C.'s parents; and (4) the District improperly dismissed the results of several tests.

First, the report did not omit required information. It detailed the results of R.C.'s cognitive, attention, social, emotional, medical, and physical evaluations, and included general education teacher reports, parent input, past and current grades, progress measurements, teacher observations and findings, a psychologist report, specific assessment results, and an "age appropriate transition assessment." While it did not include a specific statement of whether R.C. was "achiev[ing] adequately for [his] age," *id.* § 392-172A-03080(1)(e)(i), this error was harmless. *See Ford ex rel. Ford v. Long Beach Unified Sch. Dist.*, 291 F.3d 1086, 1089 (9th Cir. 2002). Second, the District's classroom observation was appropriate because the school psychologist attended R.C.'s English class for forty minutes and observed him interacting with other students, typing his assignment on his computer, and working "quietly and independently." This observation met the Washington Code's requirement that the District observe his "academic performance." Wash. Admin. Code § 392-172A-03075(2)(b). Third, the District provided R.C.'s parents with proper written notice, including "[a] description of

3

other options that the IEP team considered and the reasons why those options were rejected" and "[a] description of other factors that are relevant to the agency's proposal or refusal." *Id.* § 392-172A-05010(2)(f)–(g). And fourth, the record established that the District considered all necessary tests.

**2.** The district court properly concluded that the District provided R.C. with a FAPE. *See* 20 U.S.C. § 1412(a)(1). To determine whether an agency denied a student a FAPE, we determine (1) whether "the State complied with the procedures set forth in [IDEA]" and (2) whether the IEP was "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206–07 (1982). "A procedural violation denies a free appropriate public education if it results in the loss of an educational opportunity, seriously infringes the parents' opportunity to participate in the IEP formulation process or causes a deprivation of educational benefits." *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2010). R.C. argues that the evaluation and written notice infringed his parents' opportunity to participate because the notice and consent form did not state that the District rejected his independent psychologist's conclusion that he had a specific learning disability. At the time the District issued the notice, however, it had not rejected the psychologist's conclusions; rather, it requested the reevaluation specifically to

"review [the psychologist's] assessment." R.C. also asserts that the written notice did not explain the District's rejection of certain tests; however, the District considered these tests and concluded they did not weigh in favor of finding a specific learning disability. *See R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942–43 (9th Cir. 2007) (deferring to agency's findings regarding student's capabilities). In addition, removing R.C. from special education did not result in a lost educational opportunity because R.C. was not eligible for special education services. *See id.* at 942.

R.C. did not meet the criteria necessary for establishing the existence of a specific learning disability. Here, his "writing disability [was] limited to the underlying basics of handwriting and conventions," but both his independent psychologist and English teacher found he was more than capable at expressing stories and conveying information through written expression. *See N.B. v. Hellgate Elementary Sch. Dist., ex rel. Bd. of Directors, Missoula Cty.*, 541 F.3d 1202, 1212 (9th Cir. 2008) ("We conclude that it was reasonable for the hearing officer to rely on the testimony of [the school district's] witnesses because they had observed [the student's] school performance."). R.C. received average grades in his classes and demonstrated sufficient abilities in written expression; therefore, we defer to the ALJ's conclusion that he did not meet the criteria for a specific

learning disability.  *See Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1108 (9th Cir. 2007).

Lastly, R.C.'s educational plan accommodated his disability.  "An 'appropriate' public education does not mean the absolutely best or 'potential-maximizing' education for the individual child."  *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987) (quoting *Rowley*, 458 U.S. at 197 n.21).  "Because Congress intended states to have the primary responsibility of formulating each individual child's education, we must defer to their 'specialized knowledge and experience' by giving 'due weight' to the decisions of the states' administrative bodies."  *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 888 (9th Cir. 2001) (quoting *Rowley*, 458 U.S. at 206–08).  The District "offer[ed] a cogent and responsive explanation" for its decision, which "shows the IEP is reasonably calculated to enable [R.C.] to make progress appropriate in light of his circumstances."  *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1002 (2017).

**AFFIRMED.**